May it please the Court, my name is Linda Ziskin, counsel for Mr. Perry Hyde, my co-counsel and lead attorney, Mr. Richard Slye. There are four issues in this case I'd like to discuss with you this morning, Your Honors. First is the issue of bias. Second issue is the issue of building a foundation upon bias. Third issue is the issue of substantial evidence. A biased opinion cannot constitute substantial evidence to outweigh the opinions of treating and examining doctors in a Social Security case. And then the final issue and the most troubling is the government's argument that we should create a new flavor of deference to administrative agencies. The players in this case are Mr. Perry Hyde, the plaintiff appellant, also called the claimant in the Social Security action. His treating doctor, Dr. Owen Black, who is a super specialist, shall we say. He's an otoneurologist, which is a specialist of inner ear disorders. He is two levels above your garden variety ENT doctor. In the other corner we have Dr. Richard Hodgson, who is the expert witness called by the agency at the administrative hearing. He is an ear, nose, and throat doctor. The problem here is that Dr. Hodgson and Dr. Black go way back, and he wasn't the best medical expert to call for this hearing. Unfortunately, apparently, he was on a rotation list, and there wasn't any conscious choice by the Social Security Administration to call someone who had prior dealings with an aspect of this case. But that's the way it turned out. He failed to disqualify himself when he must have realized that this case had to do with a doctor he had had prior adversarial dealings with. In fact, he was sued by Dr. Black. Well, what's so unusual about that? In industrial accident cases, we used to spend hours and days listening to plaintiff's doctors and defendant's doctors. And it's a well-known fact of life that you go out and hire a doctor that's going to support your theory of the case. Well, that's right, Judge Goodwin. But the problem here is that you don't have an impartial medical expert rendering an opinion on the medical issues in the case. What you have is someone with an axe to grind sitting there, picking apart and discrediting his former rival. Well, how does the record display that? In the hearing testimony, Dr. Black, excuse me, Dr. Hodgson, I always mix up the names for some reason. Dr. Hodgson spends his entire testimony talking about the subjective nature of the tests that Dr. Black conducted. When, in fact, Dr. Black developed many of these tests, is a leading expert in the field, and we're talking about a very highly technical disorder that. There's no reason to think that the views expressed by Dr. Hodgson were not his sincerely held beliefs. Whether they're sincerely held or not, I can't speak to that, not being able to read his mind. Presumably, Dr. Black was testifying, saying that what I did before was correct, too. I mean, they both could arguably have an axe to grind. Maybe we shouldn't listen to either one of them. Well, actually, Dr. Black had no idea that Dr. Hodgson would be called years later to. Was his testimony influenced by the fact that Dr. Hodgson turned out to be the expert witness in this case? No, Dr. Black didn't testify. We're looking at his medical records, his treatment records of the claimant. So that happened before. He treated Mr. Hyde for a number of years, and then we come to the Social Security hearing where Dr. Hodgson appears, who just happens to have had this very adversarial relationship. Dr. Black sued not only Dr. Hodgson, because he was the head of the Department of Otolaryngology at Good Sam Hospital, where Dr. Black had surgical privileges. So here you have Dr. Hodgson telling Dr. Black, well, I don't like your methods, therefore we are suspending your surgical privileges in this hospital, which Dr. Black didn't take very kindly to, being one of a group of leading surgeons in this field who are developing treatment for this very unusual disorder. And Dr. Hodgson, Dr. Hodgson's medical partner, and Good Sam Hospital were sued, named plaintiffs, in Dr. Black's lawsuit, and Dr. Black prevailed in that litigation. It was a settlement, and as Dr. Hodgson testified, he got a bunch of money. So hard feelings? Well, look, was there a difference of opinion about how disabling this rather unusual affliction really is? You know, that's an interesting question, because Dr. Hodgson never really got to that. You would think that a medical expert, that would be what he's opining about, and instead he spent his time discrediting the tests that were used to determine whether or not Mr. Hyde had this disorder. There's nothing in the record that shows that Dr. Hodgson would disagree with the disabling effects of this disease. Also, you have Dr. Epley in the mix, and he shouldn't be forgotten about, because he is an impartial medical expert. He was the IME hired. There are at least four doctors that I remember involved in this case. Right. Dr. Black first. Well, there's also two. There's also an orthopedic surgeon and the regular family practice treating doctor, looking at things like his back and other things. But really, the issue here is going to be the ear disorder. That's the disabling disorder, because it causes things like blurred vision, vertigo, and then, as is explained in the briefing and in the medical records, the fatigue that's caused by the muscles having to compensate for balance problems. So this combination of disorders renders Mr. Hyde unable to work. He can do some things. He can drive a car. He can have a nice day at the beach, if he wishes. You know, you don't have to sit in a dark room and vegetate, as our jurisprudence in this circuit tells us. Was he pursuing a full-time educational curriculum? He was taking 12 units over one year, which I read as being six units per semester. So that's six class hours. About half of a full time. Yeah, it's probably, I think, a quarter of a full load. I think a full load is more like 24. So he's doing his best to move on with his life and be a productive citizen, and here he's being punished for that by the ALJ, who believes that his few things that he can do and his performance of his activities of daily living with help, as mentioned by the ALJ in his decision. He can't do it alone, but he has to have help to do his ADLs. This is not inconsistent with a finding of disability, but it all comes back around to Dr. Hodgson laying this erroneous foundation. And if you read the ALJ's opinion, every point he makes about there being other evidence to support a finding of non-disability comes back to Dr. Hodgson, who cannot outweigh three other doctors, two of whom are treating doctors, one of which is an examining doctor, and by CFR, 20 CFR 1527 and the case law, Lester, Embry, and Gallant all say that that cannot be. I see I have about a minute and 50 seconds left. I'd like to reserve that for rebuttal, if I may. Thank you. May it please the Court, Richard Morris on behalf of Joanne Barnhart, Commissioner of Social Security. Your Honors, before I get into the specific issue of bias on Dr. Black, I would like to just give a little context to where that issue fits in. This is a very, very well-documented case. There are over 300 pages of medical evidence. There were two hearings. There were 80 pages of transcript from those hearings. The ALJ decision itself was 20 pages. The primary issue in the case, as it is with many social security disability cases, is conflicting medical information and opinions. In this case, it appears that the major issue has to do with whether or not one of the medical experts was biased. In that regard, it's a little different, because it seems to be an issue that's not been directly dealt with before. However, underneath that issue is the opinion of Dr. Black, who stated that he believed that Mr. Hyde was totally disabled and unable to work, something that Dr. Epley also stated. And the context of that is the finding of disability is reserved to the commissioner, because it contains not only medical evidence, but it also takes into account vocational evidence. And further, the ALJ did not simply rely on the medical expert alone. I think the record in our brief reflects the ALJ looked at other evidence to support it independently. He looked at credibility, which I believe is very significant. That is not being argued in front of this court. The ALJ found that Mr. Hyde was not entirely credible in his complaints, in his subjective complaints, and that was argued at the district court level, but is not being argued now. There are other medical sources. Dr. Versosa, who was the family doctor at one point in May of 2000, found that Mr. Hyde was able to work. The ALJ looked at a combination of impairments, agreed that the inner ear problem is the major one. Mr. Hyde, when he filed, also alleged orthopedic problems with his back and neck. That's the issue that Dr. Versosa primarily addressed. Mr. Hyde also alleged obesity, diabetes, and sleep apnea. Social Security regulations permit the ALJ, in fact, demand that the ALJ look at the entire combination of impairments, which is what he did. He relied on the medical expert. He relied on his finding of credibility. He relied on Dr. Versosa, and he relied to some extent on Dr. Epley, who didn't agree with the final diagnosis techniques. Well, Dr. Epley did say that he was unemployable, didn't he? He did. That's correct. Again, Dr. Epley and ALJ noted this, did not cite any specific limitations. It was a fairly direct statement, unemployable. Again, not taking into account the vocational aspects and what other people can do. On the issue of the bias argument, I think it's interesting in that there's a question of where exactly does a medical expert fit. Social Security proceedings are non-adversarial. So certainly the federal rules of evidence don't apply. Mr. Hyde cites on briefs in cases such as Stivers and Commonwealth of Coding. Those, however, deal with decision-makers. They are a third-party tribunal, arbitrators that make the decision. Dr. Epley, Dr. Black, I'm sorry, Dr. Hodgins in this case was not a decision-maker. This case fits more within Social Security regulations, which say two things. They deal with the ALJ bias, which Ninth Circuit case law in Bunnell v. Barnhart, 336-Fed 3011-12-2003 state very specifically an appearance of impropriety is not enough. It needs to be actual. Social Security regulations also deal with consultative examiners. It's different than the medical expert, the examiners such as Dr. Epley, who do an actual exam on a claimant. The regulations address that at 20 CFR 416-919-J and 919-Q. It's a procedure that a claimant can object if they feel there's bias, and the regulations clearly state that it would be an actual conflict. In fact, the regulations give an example of prior involvement in a legal action involving you, meaning this claimant. And I would like to bring out that in addition to the presumptions of regularity in proceedings with government officials, and Dr. Hodgins was under contract, in effect, as a government official. Dr. Hodgins had 40 years of practice. He was a chair of a department at a major hospital here. He certainly has AMA medical standards, ethical standards, that he needs to rely on. So we have a presumption of regularity as a government contractor or worker. We have the ALJ, who's going to look at this and is presumed to deal with this with honesty and integrity. And we have a presumption that Dr. Hodgins is working within the ethical standards of the AMA. The facts of the case, I think, are very pointed and interesting. Dr. Hodgins did not, as Mr. Hyde claims, focus his testimony entirely on discrediting Dr. Black. If you look at the transcript of that hearing, it's very clear. He started out, number one, by describing the structure of the inner ear. He talked about what tests are normally done by specialists in that field. He talked about Dr. Black and what specific tests Dr. Black undertook. He looked at those tests and he cited them. Probably the best example was that ENG test, which Dr. Hodgins called the gold standard. And in his words, he said, normal, normal, normal, normal. That's the way it read. The criticism of Dr. Black was for the techniques of diagnosis. And those had to do with the sliding platform test, and in Dr. Epley's case, the Australian version of that. Dr. Hodgins' criticism was simply that the techniques are not objective. The ENG is objective because it measures eye movement when a person has an inner ear disorder. It cannot be altered by a patient. The other tests are subjective in the sense that a patient can make some sort of alteration. What this really boils down to between Dr. Hodgins and Dr. Black is a difference of professional opinion. Mr. Hyde himself admitted that during the hearing when this issue first came up, when Mr. Hyde's counsel was asking about it, his question began, more or less, there are two schools of thought, at least in Portland, about the diagnostic techniques of Dr. Black. So there's an acknowledgment that these two medical professionals do differ. The lawsuit, if you look at the record on that, was remote in both time and circumstances. It was 16 years ago. Dr. Hodgins was involved because he was chair of the department. He was listed as a defendant because of that role. The lawsuit was generated because an independent audit committee found that Dr. Black was using surgery for this diagnosis of paralymphystula more times than they thought necessary. There's no indication, no showing in the record, that Dr. Hodgins was in any way personally affected by that lawsuit. There's no monetary, no professional, nothing that shows that he was harmed. And to now say 16 years later that a case like this would trigger a vendetta of some sort, I think, is a large stretch. And the last point on that issue is the issue of bias here is, to some extent, once removed. The ALJ is the trier of fact in this case. Dr. Hodgins did not make a decision. He provided evidence at the request of the administrative law judge. The ALJ is certainly entitled to the deference of honesty and integrity in his role. He knew the issue. He addressed it. And he found that Dr. Hodgins was not necessarily swayed by this prior issue. I would like to say in conclusion that the issue needs to be taken in context. The medical opinion that we're dealing with here is Dr. Black saying Mr. Hyde is totally disabled. Dr. Epley says something similar. ALJ is the trier of fact, is responsible for looking at the entire record, medicals, the credibility, the other evidence. And his decision in this case was, number one, there was an inner ear disorder. There's no question about that. Issue number two, and the primary one, the two doctors' opinions that there was total disability was not, in fact, substantiated. The record as a whole demonstrates that. I believe substantial evidence would dictate that the findings should be obtained. Did the record show that Mr. Hyde had these other symptoms other than the inner ear problem that were making it difficult for him to work? Sleep apnea, diabetes, obesity. Yes, they did. All of these had preceded the accident that he claimed triggered his inner ear. They're mixed to some degree. Mr. Hyde had an earlier industrial accident that caused the back and neck problems. Motor vehicle accident, September of 99, probably aggravated that. So he was pretty much of a wreck. When this case came before the hearing officer, his physical condition was not very optimistic. Well, I wouldn't agree with that, Your Honor. The record, in fact, indicates, for instance, that the diabetes was under control and that the sleep apnea was under control. So enough time had passed. We had Dr. Versosa, who I think is in an interesting position, a family doctor, certainly aware of the inner ear problems. She referred Mr. Hyde to Dr. Black, was aware of all the big picture of this. And in May of 2003, that was before the hearing, found that the claim material was capable of light work. And I think, again, if you look at the hearing transcript, Mr. Hyde does say to some extent these problems have been solved. He certainly says the balance and dizziness problems are not. We're dealing with a credibility issue there.  Thank you, Your Honor. Rebuttal. Judge Goodwin, in response to your last question, I'd like to elaborate on that just a bit. You asked if the record showed other problems that made it difficult for Mr. Hyde to work. I'd like to point out diabetes and sleep apnea, which were preexisting conditions, were not under great control. In fact, one of the reasons that the surgery was delayed was because of his elevated blood sugar. And the ALJ used this against Mr. Hyde in saying that, well, if it was really so bad, you would have gotten the surgery, you know, more quickly. Well, it wasn't medically indicated at that time. Also, sleep apnea is an interesting disorder, and to combat it, you don't cure it. You wear a CPAP device over your face at night. This blows air into your airways in order to keep the breathing passages open. Imagine the effect this has on someone with an inner ear disorder with a communicating hole between chambers of the inner ear. The CPAP device was not a cure-all for Mr. Hyde in any sense of the word, and the surgery was also delayed because of that. So he had a combination of disorders that really did, you know, as you say, Judge Goodwin, you know, it was pretty much of a mess before the car accident. The car accident comes along, he's got this preexisting back and neck condition, and now he's got the inner ear disorder. So this combination of impairments just weighs so heavily for a finding disability that in conjunction with, as government counsel has said, a well-documented medical record. Yes, it is well-documented. You've got three treating and examining doctors all opining essentially the same thing, that this gentleman has a very serious disorder that causes extreme functional limitations. Whether these issues are reserved to the commissioner or not, they must be considered and included in the residual functional capacity, which was not done, these limitations due to his inner ear disorders such as fatigue, balance problems, vertigo, blurred vision, not presented to the DE. So we have no idea what's going on. At the very minimum, a remand for, first of all, unbiased medical testimony. That would be nice, to really hear from someone like Dr. Epley, who's an IME, in an adversarial proceeding. Judge Goodwin, you mentioned workers' comp. That's adversarial. This is supposed to be non-adversarial. And then secondly, for further vocational testimony as to whether someone's, I see my time's up almost, whether they can perform the kind of work that was identified by the vocational expert. However, I think that if this court looks at. However, when your time's already up. Well, actually, oh, it's on the positive side. Oh, I see. It's like my bank account. We're on the negative side of things. Okay. Thank you, Your Honor, very much. Thank you. Thank both counsel for the argument. The case just argued is submitted. The next case is the one that's already been submitted on the briefs. So we'll move to Jones v. Thorne. Just for reference, we will take a brief recess after the argument in this case and give you a chance to reorganize yourselves before we argue the two Lamphere cases. First, I'd like to say.
judges: Goodwin, Tashima, Clifton